**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4329-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THOMAS HEROLD,

     Defendant-Appellant.

_____

> Submitted February 13, 2019 – Decided February 27, 2019
>
> Before Judges Koblitz and Mayer.
>
> On appeal from Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 17-029.
>
> Isabelle R. Strauss, attorney for appellant.
>
> Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula C. Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Thomas Herold appeals from an April 19, 2018 Law Division order denying his municipal court appeal. Both the municipal court and Law Division found defendant's dog, Dozier, potentially dangerous. We affirm.

On February 24, 2017, the owner of a small dog, named Brooklyn, was walking with her daughter and Brooklyn past defendant's residence. Dozier was standing on the porch. Dozier was not on a leash and the home had no fence to prevent the dog from running into the street.

As Brooklyn walked past defendant's home, Dozier bolted off the porch, dashed toward the street, and violently attacked the smaller dog. Defendant, who was in the backyard, heard screams and ran to investigate. Defendant activated Dozier's shock collar multiple times but was unsuccessful in stopping the attack on Brooklyn. Dozier continued his attack until defendant was able to physically pull his dog away from Brooklyn. When pulling Dozier away, defendant anticipated he would be bitten by his own dog.

After the attack, defendant drove Brooklyn's owner and the injured dog to PetSmart, where a veterinarian declared Brooklyn dead upon arrival. The veterinarian observed puncture wounds on Brooklyn's chest and neck consistent with the teeth of a large breed canine. The veterinarian determined Brooklyn died from a bite inflicted by a much larger animal.

2

A police officer was dispatched to the PetSmart in response to a report of an animal attack. Defendant admitted to the investigating police officer that Dozier killed Brooklyn. He also told the officer Dozier bit another dog a few months before this attack. Defendant explained he offered to buy a new dog and pay Brooklyn's veterinarian bill.

On the day of the attack, a municipal animal control officer went to defendant's home and quarantined Dozier. Because defendant is legally blind, he told the animal control officer he did not see what happened to Brooklyn. Defendant also told the animal control officer the following: the incident was his fault, Dozier previously bit another dog, and Dozier had a "high prey drive with small dogs."

After the mandatory ten-day quarantine period, the animal control officer returned to defendant's home. The animal control officer observed Dozier "stiffen at attention" upon seeing movement but relax shortly thereafter. She noted Dozier presented with "no hackles . . . raised and the tail was relaxed."

On March 24, 2017, defendant received a municipal summons requiring Dozier be impounded pursuant to N.J.S.A. 4:19-19 of the Vicious or Potentially Dangerous Dog Act (Act), N.J.S.A. 4:19-17 to -37. The animal control officer

went to defendant's home to impound Dozier. She observed Dozier "did not appear aggressive."

The State requested a hearing in municipal court to determine if Dozier was a potentially dangerous dog under N.J.S.A. 4:19-23. At the municipal court trial, the investigating police officer, animal control officer, and PetSmart veterinarian testified for the State. The animal control officer and veterinarian testified consistent with their original statements to the investigating police officer.

Defendant also testified, admitting Dozier attacked Brooklyn. He also told the court he no longer uses a shock collar because the shock collar likely triggered aggression in Dozier. Defendant also testified Dozier interacted with people and other dogs since the attack on Brooklyn without further incident.

In the municipal court hearing, defendant presented the testimony of an expert in animal behavior. The expert told the municipal court judge he observed Dozier on two occasions, stating Dozier displayed friendly behavior and did not appear aggressive toward humans. He noticed Dozier "was interested in . . . chasing small animals," but observed the dog "was decreasing his interest in chasing smaller animals." The defense expert opined Dozier could be controlled by the use of a harness and behavior training.

A-4329-17T4

Defendant's expert provided his theory regarding Dozier's attack on Brooklyn. The expert testified that the activation of the shock collar before or during the attack probably escalated Dozier's aggressive behavior and the dog likely experienced "shock elicited aggression." According to the expert, when a dog receives a shock, the animal believes the pain from the shock is triggered by the other dog, causing the shocked animal to fight harder.

When asked if Dozier posed a threat to humans, the animal expert responded, "[a]bsolutely not." However, when asked if Dozier posed a threat of death to another domestic animal, the expert responded he "would tend to say no." During cross-examination, defendant's expert admitted it is possible Dozier could attack another animal and Dozier has predatory tendencies that defendant was working to diminish.

After hearing the testimony, the municipal court judge found for the State, deeming defendant's dog potentially dangerous because Dozier killed Brooklyn and posed a threat of death to another domestic animal. The municipal court specifically rejected the testimony of defendant's expert as "fraught with inconsistencies" regarding Dozier's training with the halter and exposure of Dozier to smaller animals to decrease the risk of another attack.

A-4329-17T4

Defendant filed an appeal from the municipal court's order. On February 15, 2018, a Law Division judge conducted a de novo hearing.

After hearing arguments and reviewing the record, the Law Division judge issued an April 16, 2018 written decision, finding the State proved by clear and convincing evidence that Dozier killed Brooklyn and posed a threat of death to other domestic animals.

Giving "due regard to the municipal court's credibility determinations," the Law Division judge determined the testimony of defendant's expert did not alter the municipal court judge's conclusion that Dozier presents a threat of death to other domestic animals. The judge found defendant's animal behavior expert "tacitly admit[ted] that Dozier [was] in fact aggressive towards other smaller animals." The defense expert also opined the use of a special leash, known as a "snoot loop," would "lessen aggression" but was unable to state with "certainty . . . that Dozier would not display aggression towards domestic animals." Further, the judge noted defendant's expert had not observed Dozier "interact with other domestic animals" prior to arriving at his conclusions. The Law Division judge highlighted the equivocations in the testimony proffered by defendant's expert, and concluded the inconsistencies "lessened the impact" of the expert's testimony.

A-4329-17T4

The Law Division judge issued an order, imposing conditions on defendant's ownership of Dozier. Defendant was required to obtain a dangerous dog license, municipal registration number, and red identification tag from the municipality. In addition, defendant had to keep Dozier in a fenced-in enclosure of a specific size. Dozier could only be removed from the enclosure if he was "securely muzzled and restrained with a tether approved by the animal control officer" that would restrict the "dog's movements to a radius of no more than three feet from [defendant]." Further, defendant had to display a sign on his premises warning of the potentially dangerous dog.

Defendant appeals, arguing the Law Division judge erred in his de novo review of the municipal court judge's denial of his motion for acquittal at the conclusion of the State's case. In addition, defendant contends the State failed to prove by clear and convincing evidence that the dog was potentially dangerous as of the time of trial.

In reviewing a judgment of the Law Division on a municipal appeal, we apply a sufficiency of the evidence standard. See State v. Ugrovics, 410 N.J. Super. 482, 487-88 (App. Div. 2009). We must "determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). "When the

7

reviewing court is satisfied that the findings and result meet this criterion, its task is complete and it should not disturb the result . . . ." Ibid. We evaluate only the decision of the Law Division, not the municipal court. Id. at 157.

Review of a municipal court conviction by the Superior Court is conducted de novo on the record, unless the record is unintelligible or incomplete. R. 3:23-8; see also R. 2:10-4. The Superior Court should defer to the municipal court's credibility findings. State v. Locurto, 157 N.J. 463, 470-71 (1999) (citing Johnson, 42 N.J. at 161-62). "On a de novo review on the record, the reviewing court . . . is obliged to make independent findings of fact and conclusions of law, determining defendant's guilt independently but for deference to the municipal court's credibility findings." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 3:23-8 (2019).

We first consider defendant's argument that a judgment of acquittal should have been granted by the municipal court judge at the close of the State's case. Rule 3:18-1 provides "[a]t the close of the State's case . . . the court shall, on defendant's motion . . . order the entry of a judgment of acquittal . . . if the evidence is insufficient to warrant a conviction." A judge, viewing the State's evidence in its entirety, "and giving the State the benefit of all . . . favorable inferences which reasonably could be drawn therefrom," must determine if the

State's evidence is sufficient to find the charge has been established beyond a reasonable doubt.  State v. Reyes, 50 N.J. 454, 459 (1967).

Pursuant to the Act, before a court may declare a dog potentially dangerous, the State must prove by clear and convincing evidence that the dog "severely injured or killed another domestic animal," N.J.S.A. 4:19-23(a)(2) and "poses a threat of death to another domestic animal."  N.J.S.A. 4:19-23(a)(2)(b). "A dog shall not be declared potentially dangerous for . . . severely injuring or killing a domestic animal if the domestic animal was the aggressor."  N.J.S.A. 4:19-23(b)(2).

In this case, it is undisputed Dozier killed Brooklyn.  Defendant explained Dozier attacked and killed Brooklyn when he spoke to the PetSmart veterinarian and the investigating police officer.  Defendant admitted the following: Dozier left the front porch to run into the street where Brooklyn was walking with his owner; Dozier was not on a leash at the time; Dozier grabbed Brooklyn by the throat and would not release the smaller dog until defendant inserted his fingers into Dozier's mouth.  Thus, there was sufficient evidence in the record upon which the Law Division judge found Dozier killed Brooklyn.

In addition, the State's proofs demonstrated defendant knew Dozier posed a threat of death to other domestic animals.  Defendant admitted to the police

officer and the animal control officer that Dozier bit another dog several months before the attack on Brooklyn. In addition, defendant told the animal control officer that Dozier had a "high prey drive with small dogs." The animal control officer also witnessed Dozier stand at attention in response to movement.

Having reviewed the record, there is sufficient credible evidence that Dozier poses a threat of death to other domestic animals. The Law Division judge concluded the inferences drawn from the evidence indicated Dozier's attack on Brooklyn "was not an isolated incident, but rather a recurring threat." Based on the foregoing, we are satisfied defendant's motion for a judgment of acquittal was properly denied.

We next consider defendant's argument that the Law Division judge erred in declaring Dozier a potentially dangerous dog because he misinterpreted the Act. According to defendant's reading, the Act requires a determination that the dog poses a threat at the time of trial and not at some other time.

Defendant argues the "critical date for determining whether the [dog] in question poses a threat is the date of trial" and claims Dozier's aggression toward small animals resolved by the trial date. Defendant provides no legal support that the "critical date" for evaluating a dog's behavior pursuant to the Act is the

date of trial. [1]  The Legislature created the Act to protect the public, see N.J.S.A. 4:19-17, and there is no time period stated for evaluating a dog's behavior.

Even if the "critical date" for evaluating Dozier's behavior was the date of trial, defendant failed to provide evidence that the dog's behavior resolved by that time.  Defendant's expert was unable to state with certainty that Dozier's aggressive tendencies toward smaller animals had abated and that Dozier was no longer a threat to domestic animals.  The judicial determination that Dozier posed a threat to other domestic animals, even as of the date of trial, is supported by credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1]  The parties bear the burden of providing law in support of their position.  See State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977) (holding "parties may not escape their initial obligation to justify their positions by specific reference to legal authority.").  See also R. 2:6-9.

A-4329-17T4